1390, Tammy Rae Schofield v. Andrew M. Saul. You may proceed. Michael Kelly for the appellate, Tammy Rae Schofield. May it please the Court. The issue before this Court is whether there are judicially reviewable findings which will allow it to affirm the use of the lower age category in a borderline age situation. The Commissioner in this case has conceded that it is a borderline issue, meaning that there was a date last insured and Ms. Schofield changed age categories within the provided guideline timeframe, actually four months after the date last insured, she changed to a higher age category. And using the medical vocational rules, that there was a different result when you change those age categories. At the lower age category, she would not be disabled. At the higher age category, she would be disabled. And so in this situation, the judge made no findings about how he... You said they conceded that it was a borderline age situation. Correct. Did they also concede that if she had been deemed 55, then she would have been eligible for benefits? Yes. Based on the medical vocational rule 20206, because the judge found that she was limited to light work. At step five, you have to decide which grid rule applies. And so you match up age, education, work experience in the advanced age, and then you compare that. And in this situation, she had passed work that was deemed to be semi-skilled, but based on the judge's finding and the VE's testimony, she didn't have any ability to transfer those skills. So that's the distinction between either using 20204 versus 20206. And when you have 20206, she has semi-skilled work that does not allow her to perform semi-skilled work. So essentially she's classified as unskilled. And so at light, unskilled, at 55, she would be found disabled. But I thought that the ALJ did not apply a specific medical vocational guideline rule in the analysis, but considered all relevant factors. So we don't know that the ALJ would have reached a different result if he'd applied a different age category. And that's the primary problem with this is that there aren't judicially reviewable findings that he made to get to that point. So we don't know the answer to Judge Graves' question, though. The idea that, oh, she would have had a different outcome if she was in the other higher age, we don't know that. Yes, we actually do. How do we know that if the ALJ did not do that and did not use a specific medical vocational rule, but just used the holistic factors? The way it works at Step 5 is it's actually kind of a two-step analysis. And what you do is you have to look at 404.1569AD. You also look at the grid rule 200.00E2. And what that tells you is when you have a combination of impairments, where you have both exertional and non-exertional impairments, what you do first is apply the strength limitation, sit, stand, walk, lift, carry, push, pull. You use that first. And in that situation, if that grid rule directs a finding of disabled, then it is conclusive and it is inappropriate to solicit vocational testimony to rebut that. And that's SSR 835A. So yes, we do know that it would have resulted in a finding of disabled, regardless of what the judge put in the decision on the other factors. Because you believe that experts should not have been allowed to testify? That is correct, because it is rebutting a directed conclusion. The administration has taken administrative notice that when somebody is over 55, there are a total of 137 sedentary jobs and some 1,500 light jobs that, based on their age, education and work experience, they cannot be expected to vocationally adjust. In fact, the three jobs the V.E. identified would fall within the category that the Social Security Administration has recognized she can't vocationally adjust to under their binding guidelines. Okay. I have three more questions, please. The Appeals Council here expressly considered the borderline age situation, correct? No. It said that it put a finding in the Appeals Council determination that it said that it did not believe that it would result in a different conclusion. But it actually made no findings on the borderline age issue. But when it says that we determine that it makes no difference, then it is considering it. The problem with that is that if you look to the HALEX itself that was in place, this is a strange situation. After the judge issued the decision is when the HALEX was amended. If you look to the new HALEX, it specifically refers back to the POMS, the 25.015006A or 006. And in there it gives the example where you should find somebody disabled, which is an individual who is closely approaching advanced age, limited to light work, with only occasional overhead reaching. Ms. Schofield was found to have bilateral occasional reaching and frequent reaching with her dominant hand and occasional handling with her dominant hand and only occasional handling with her non-dominant hand. So for you to win, we have to disregard the Appeals Council statement? No. I think what it does is there's still, this goes back to the Son v. Colvin case where the Appeals Council made no additional findings. There is an important set of facts here that she had limitations in overhead reaching that was similar to the example given that would normally result in a finding of disabled, and yet they said nothing about that. They said nothing about the factors. They said nothing about the additional reaching or handling limitations at that time. I know you want findings, but the regulation does not require the ALJ to state the reasons for applying the age category that is applied in a borderline situation. I think it does in the sense that while the Commissioner emphasizes the word consider, the actual sentence includes the transitive verb evaluate. And the only evaluation that can be done is with factors. The only way to evaluate factors is to make findings within the decision. It does not say you have to state your reasons. But the new HALEX, you also have to look at the timing of the HALEX. The old HALEX which determines this particular, or applies in this situation, was issued in November of 1993. That is prior to the 2000 amendment of the regulation when the last sentence that we are discussing was not in the regulation at the time the original HALEX was issued. Once the new HALEX was issued, they included it in there, not because it was a substantive change, but because there was the expectation that the judges would be putting this in the decision all along. Okay. Well, then my third question, which is maybe really my fourth or fifth now because we had to go back and forth, do we have to take a side in the circuit split to resolve this case? I think you do have to take, I don't think there is really much circuit split. It is a matter of how they approach the issue. And I think in terms of adopting rule, the best explained rule is going to be in Daniels, which indicates that findings are necessary. And even in the Phillips case, which was decided, you know, after, even after the Third Circuit issued a buoy, was that they have come down on this particular line, and then also the Commissioner's current HALEX emphasizes that explanation is what we need within the decision. And I think the most important... And I am back to a spot where I am prepared to accept that an explanation is required with regard to this, the H category. But I just don't understand why what the Appeals Council did isn't a sufficient explanation. Clearly they considered it. The Appeals Council did because they referenced it. You agree with that? Yes, they referenced it. The difficulty here is substantial evidence, if we were looking to substantial evidence, wouldn't necessarily support that finding because there is a direct example in the materials they would have used to make that evaluation that runs contrary to it. Because, I mean... My other question has to do with the vocational expert. You said the vocational expert's testimony should have been excluded. Not necessarily, not excluded. I am just saying that it cannot be evidence to rebut a directed conclusion. That is what the medical vocational guidelines set out, is that if you reach the finding of disabled, that is conclusive and it is incorrect for the judge to solicit VE. Testimony that would rebut that. Because in this particular case, yes, there is going to be a few jobs out there that somebody with this limitation could potentially perform. It's just that the commissioner has taken administrative... Well, that wasn't just a few, there were thousands according to the expert, isn't that right? Correct. But the administration has taken administrative notice that even though there may be jobs out there that such an individual can perform, they have made a finding under the regulations that they cannot vocationally adjust to those sets of jobs. All three of these fit within that category. It's... I'm not saying it always makes sense, I'm just saying that that is what the rules are and the rules are conclusive in that particular situation. Counsel, I am very puzzled by your statement that we don't have to... that there's really not a difference or circuit split. Because the Ninth Circuit in the Lockwood case says the ALJ is required to consider whether to use the older age category in a borderline situation, but there is no requirement that the ALJ explain in her written decision why she did not use an older age category. And you are asking us to graft just that sort of requirement here onto the reg. Correct. But also in the Ninth Circuit, the Ninth Circuit takes a lesser view of the sub-regulatory material. So in terms of rulings, hallux, poms, the Ninth Circuit takes a rule that they are not allowed to look at those types of items in terms of making their determination. Whereas in the Fifth Circuit we have the ability... that ALJs must follow their own internal procedures, as opposed to... Right, but follow your own internal procedures is different about than making factual findings to support your determination that you're not going to, in the borderline, which way you go. Correct. That's two different things. But in terms of compliance with the Act under 405B, they are instructed by Congress to make those types of decisions. And so in terms of administrative law in general, I'm sure there's lots of agencies that would not like to explain how they reached a particular conclusion. Well, this particular... the reg does not require that this be explained. The Sixth Circuit has... which doesn't have the same issues that you say the Ninth Circuit has, also has stated the exact same rule, that they don't have to explain their thought processes. So what do you do with that? But in Bowie there was also the sentence that said that even though they don't make that as a patent rule, that there are circumstances in which findings were going to assist the court in order for them to make such a conclusion. Well, it could have gone either way here. And so you could probably justify substantial evidence on either side, perhaps. I don't know. With a vocational expert, I think you have a... if we do include that, you have a tougher road. But what's... so why isn't this just a judgment call that we should defer on? There must be something for you to defer to. Well, they considered the borderline reg and they rejected it. But they rejected it when their own procedures that they would, you know, presumptively be following, would indicate that it should have been awarded. If the example is to be followed in the HALEX, then the case would have been awarded and there must have been some other factor that they did not set out in the Appeals Council determination that swayed them one way or the other. And I don't think that this court can, you know, put a finger on one side or the other to say that it was or was not the correct determination. The expert testimony. The expert testimony was very much a part of the decision. But the expert testimony runs contrary to the medical vocational rules that says that you should not... and the 83-5, SSR 83-5A, that says that you should not solicit vocational testimony to rebut a conclusion that is directed by the medical vocational... Did you appeal that point? Do you have an appeal point that says the ALJ was wrong and procedurally erred in considering that expert testimony and therefore you should send it back for that reason? Is that... As a separate point, no. But throughout the district court and through this court, we have consistently cited 83-5A for the proposition that you cannot rebut... that a VE testimony cannot be solicited to rebut a directed conclusion. Okay. Well, but if that was a slam dunk as opposed to a judgment call, why wasn't that a point raised? The point was... I think where this gets confusing is because of the court's acceptance of my... I'm out of time. You may answer the question. Because the court got focused on the Trevino case and if... and my point on the Trevino case is that they misunderstood the use of the grid rules as a framework and they got... And so by accepting the Trevino case, if I'd have been in the Trevino case, I would have made the same point that it was inappropriate to rely on the VE testimony to rebut the directed conclusion. And I think you can see that in both footnote 10 and footnote 13, that the court is immensely confused over how to use the grids as a framework. And I can go into that in my rebuttal time later. Okay. Thank you very much, Mr. Kelly. You've saved time for rebuttal. Mr. Chandler? Can you address that first, please? That there was just an error right out of the gate and that the expert testimony should never have been considered and that we... that's a big problem in this case? Yes, Your Honor. May it please the court, Thomas Chandler on behalf of the Commissioner of Social Security. What Appellant's arguing is essentially putting the cart before the wheel. ALJ should have applied an older age category than the Appellant's actual age would dictate. And having done so under the grid rules, then would have been foreclosed from soliciting vocational expert testimony. But that's not how Step 5 works. At Step 5, when you have non-exertional impairments, which is... it's undisputed that the Appellant has in this case. That's not an issue. Then the ALJ cannot simply rely on a grid rule and must instead solicit vocational expert testimony unless the ALJ were to decide to go ahead and just apply that older age category rather than the age that the Appellant actually is. But the regulations do not require automatic use of an older age category whenever a borderline situation exists, even if the claimant is within only a few days, not even a few months of that older age category. So it's certainly appropriate for the ALJ to solicit testimony of a vocational expert to determine whether substantial evidence supports a Step 5 finding of not disabled, which is exactly what the ALJ did in this case. Can we go back to Judge Graves's question at the very beginning to your friend on the other side? The question was, does the Commissioner of Social Security concede that a finding of disability would obtain if we applied the grid rule for someone who's 55 or older? Yes, Your Honor. If the Appellant was 55, 56, 57, however much older, at the time of the date last insured, the medical vocational guidelines would dictate a finding of disabled. That's not an issue in this case. So one grid rule says not disabled, another grid rule says disabled, and it's undisputed that she's within a few months of the border between those two grid rules. Your regulations, the Commissioner's regulations, say that in these borderline situations, quote, we will not apply the age categories mechanically. So then the question in the case is, what does it mean to not apply the grid rules mechanically? Simply saying, well, she's not 55, that obviously doesn't count, which is what the ALJ said. Well, I would say not quite, Your Honor. That's an important question. What does it mean to not apply them mechanically? As you pointed out, the regulations state that an ALJ has to consider whether to use the older age category after evaluating the overall impact of all the factors in a case. To not apply the grid rules mechanically means the ALJ takes a holistic approach to a case and, after evaluating the overall factors of the case as per the regulation, makes a decision on disability on a case-by-case basis. That is exactly what the ALJ did in this case by soliciting the vocational expert testimony. The ALJ didn't simply apply a grid rule mechanically. In fact, the ALJ did not rely on a grid rule at Step 5. The ALJ went beyond the framework of the grids to solicit uncontroverted vocational expert testimony at the administrative hearing that took into account the very limitations that Appellant now says constitute additional vocational adversities that would merit using a higher age category than the actual age would dictate. So I understand their argument on substantial evidence to be largely, if we're applying the grid rule that applies to folks under the age of 55, was the holistic approach that the ALJ applied appropriate. That's one argument. But I take their primary argument to be, what about the grid rule that applies to people who are 55 or older? And she's very close. By the terms of the regulation, she's within a few days to a few months of the 55 or over. And so, as Judge Graves pointed out, that sure seems to suggest that when you're in this borderline situation where you need to be, you know, where the grid rule that applies is outcome-determinative to the claimant, that you have to do something more than simply say, well, grid rule for 55 and above doesn't apply, therefore we don't have to do anything beyond what we would ordinarily do at Step 5 for people who are under the age of 55. Right? I take your answer to my previous question was, all of the stuff that the ALJ did for people under the age of 55. My question is slightly different, which is, since she's so close to 55, doesn't this regulation require more than simply saying, but she's not 55? The regulation requires the ALJ to consider whether to use the older age category after evaluating the overall factors in the case. The regulation certainly does not require any explicit finding. And the relevant HALX certainly does not require any explicit finding. In fact, the relevant HALX in this case, 2532, says that ALJs were instructed that they need not explain their use of an older age category. And that's important. The HALX, it's a shorthand term for Hearings, Appeals and Litigation Law Manual. It provides procedural guidance to the staff and adjudicators of the Office of Hearings and Appeals. In other words, the decision writers and the ALJs at the hearing level of the administrative process. And the relevant HALX, the HALX in effect at the time of the ALJ's decision, required no explanation in a borderline age, stated that the mere presence of vocational adversities does not require using an older, a higher age category, and adopted a sliding scale approach regarding  Dr. Michael McClendon. When you talk about the HALX, and I may be getting all this confused, but when you look at the PALMS, and this looks like DI 25015.005D4, which is the PALMS that was in effect when the ALJ made the decision. Is that right? I know I've read a bunch of it. I believe that's correct, PALMS. Whether subsection D4 was in effect at the ALJ's decision is another question. But doesn't that PALMS say that the decision to use the claimant's chronological age and explain the specific factors supporting the determination, doesn't that PALMS say it's required? An explanation is required about what the decision is going to be. Isn't that what the PALMS says? Well, the PALMS, or the Program Operations Manual System, what it is, it provides instructions and guidance to DDS officials at the initial and reconsideration levels, the state agency levels, not at the hearing level. That's where the HALX comes into play. So it's more guidance at the initial levels, not the level where you might have an opportunity to solicit vocational expert testimony or to cross-examine a vocational expert. So you're saying it doesn't apply to the ALJ? I'm saying it's not where the Fifth Circuit should look. The Fifth Circuit should look, if you're talking about internal agency guidance, to the HALX, because that pertains to what the decision writers and the ALJ need to do at the hearing level. So the PALMS is not the Social Security Administration's internal procedure? It is with respect to the instructions and guidance to the DDS officials at the initial and reconsideration levels. In fact, if you go down to that same PALMS, but Subsection C. But we agree that somebody with the Social Security Administration has to follow this internal procedure? Yes. But one question that's open is whether Subsection D.4. was actually in effect at the time of the ALJ's decision. The Commissioner does not concede that D.4. was actually in effect at that time. Additionally Do we review that at all? Do we have jurisdiction to review whether or not someone at the initial area, initial stage, followed their internal operating procedures? I didn't think that was part of what we could review. You're correct, Your Honor. The review has to do with the final agency decision in this case, which is the ALJ's decision. Can we talk about that for a minute? Yes, sir. So I took – did he answer your question? Yes. So the final agency decision that we are supposed to review, I take that from page two of your brief in the sentence you just gave to Judge Elrod, that that's the ALJ decision. Correct. So if we determined that the ALJ decision is contrary to law because it doesn't make the findings required by your regulation 404.1563, but we think that the appeals counsel's explanation is satisfactory, then what happens? Well, the final agency decision – the final administrative decision for purposes of judicial review is the – excuse me, the ALJ's decision. That's not – the idea that the appeals counsel's decision would be the final agency decision for purposes of judicial review has not been a point raised by appellant. It's not been a point actually briefed by anyone in this case. In the instant case, what happened was the appeals counsel declined or denied appellant's request to review the ALJ's decision and did so in a form letter. It's a notice, and it's obviously – it's in the record and your honors have been referring to it. And what that does, part of what these notices do is they recite the reasons that the appellant or the claimant wanted the review in the first place. But the appeals counsel does not open the record to review an independent further decision. Well, let's specifically discuss the borderline age issue. They listed that as something – one of the reasons that – And the ALJ didn't. Well, what the ALJ did was specifically cite to appellant's date of birth, age, specifically cited to the regulation, just like in the Ninth Circuit case. Let me ask another. Yes, sir. Is the appeals counsel decision a part of the final decision that we appropriately consider on appeal in this case? It's a part of the – it's certainly a part of the record, but it is the ALJ's decision that is the decision that is on appeal. But the appeals counsel determined that the ALJ did it well enough. Well, the appeals counsel certainly declined to grant review. It declined to grant review because it didn't find anything out of the ordinary about the borderline situation, and it was well aware that that was the issue. And the vocational expert specifically considered her a specific age, and that's – there's testimony about that in the vocational expert as well. Yes, ma'am. So if we're allowed to consider the vocational expert, there's certainly information in the record that could support the determination. Oh, certainly, Your Honor. And not only is – are Your Honors allowed to consider the vocational expert, the vocational expert testimony is the linchpin constituting substantial evidence at step five. Again, with respect to this argument that the appellant's raising, it puts the cart before the horse. The ALJ must solicit vocational expert testimony where there are, as here, non-exertional limitations, unless the ALJ were to go ahead and apply that older age category. But there's nothing in any HALEX, and there's certainly nothing in the regulation, that require an age – that require an ALJ to do so. So it's certainly proper, and it is certainly not foreclosed, that the ALJ would solicit vocational expert testimony to help inform the step five finding – But it – the ALJ has a lot of discretion. It could – it could have just started with the higher level if it chose to. It's possible, but it's certainly not required. It's part of deciding cases on a case-by-case basis. In this instance, it's part of not applying the age categories mechanically, that the ALJ would go ahead and solicit vocational expert testimony. And do we know, though, when the ALJ chooses to do that, and when the ALJ instead does this more rigorous analysis? We know in this case, because the ALJ did solicit vocational expert testimony, which brings up an important distinction between the facts of this case and the Daniels Tenth Circuit case that the appellant wishes this Court to rely upon. As I said, in the Lockwood case in the Ninth Circuit, the Court found that there was sufficient evidence that – to show that the ALJ considered the age by mentioning the date of birth, making a finding as to what plaintiff's age was, and citing to the appropriate regulation. All those things happened in the instant case. So the ALJ's decision shows that the ALJ realized the appellant was approaching the next age category. Additionally, in the Fifth Circuit, there's a presumption of regularity and a longstanding view that implicit findings are okay. And this Court has consistently assumed that an ALJ has performed his regulatory duties despite minimal articulation of his findings and reasoning. And this – and the Commissioner would urge that this Court not adopt the Daniels Tenth Circuit case that would apply a judicially created, more stringent requirement of an explicit finding where there is none in the regulation. Counsel, how does this work in the real world? If she was so close, then does she go back the next year and do it again? Or – and start over and get the findings she needed because she'll get it automatically? How does it work in the real world? Well, Your Honor, this is a case where the appellant filed for a period of disability and disability insurance benefits under Title II. And under Title II, there's additional issue of whether the insurance status requirements of the act are met. And that – basically what we're talking about is the fact that the earnings records show that appellant had acquired sufficient quarters of coverage to be insured through December 31, 2013. This is the date last insured. This is not in dispute. It's not an issue in the case, December 31, 2013. So appellant had to establish under the law disability on or before December 31, 2013 in order to be entitled to benefits. And so in the instant case, if appellant happened to have been 55 or 56 or 65, as of the date last insured, the medical vocational guidelines or grid rules would have directed a finding of disabled. But appellant simply was not. And these are the facts. But she can't go back. No. Unless she had insurance for the other – the current time period. Unless the – Or once she became – Her earnings records showed that she had. And then her date last insured would be a different date. But those aren't the facts before the – No, but so she would have to present a new thing with another date last insured with her current age. You could always file. But my point is that the date last insured is the date last insured. So she may not be eligible. Correct. And sometimes with agencies the size of the commissioners – And the only way to have a new earnings record is to have more earnings. Is that right? I mean, she'd have to get another job to re-institute some earnings period for a date last insured. Yes. In the instant case, the vocational expert testified there were 475,000 jobs in the national and could perform. Sometimes agencies have to draw lines. And one might argue – appellant might argue that a line would be arbitrary. But that doesn't – even if that were so, that doesn't make a line improper. And in the instant case, the date last insured is a line in this case. And to solve the issue of borderline age situation, instead of mechanically – That's the line that's important in this case. Right. That's very important. And the ALJ didn't – Whether she's 54 or 55. Yes, Your Honor. And the ALJ did not mechanically apply those grid rules. In fact, the ALJ did not simply say, here's the grid rule for her actual age. The ALJ solicited a vocational expert testimony at a hearing. Appellant was there. Appellant was represented by an experienced professional. It was uncontroverted testimony. There's no question as to what the vocational expert testified. There's no question that the vocational expert's testimony included those limitations that appellant says are additional vocational adversities. And there's no question that there was no cross-examination of the vocational expert. The testimony went uncontroverted. That is all undisputed. And the testimony could not be more clear with respect to the availability of jobs that the plaintiff could perform. And this brings us to a point – distinction between the facts of the instant case and, again, the Tenth Circuit Daniels case. Now for the – to begin with, there's no explicit requirement of the regulation or the applicable HALEX that there be an explicit finding. And so we urge this Court not to adopt the judicially created rule from the Daniels case. But secondly, Daniels case was not a case where there was any vocational expert testimony. In Daniels, the ALJ applied – directly applied the grid rule in a borderline H situation to find that the claimant was not disabled. By contrast, here in the instant case, we have that substantial evidence. We have the ALJ not applying a grid rule mechanically, but instead deciding this issue on a case-by-case basis by soliciting uncontroverted vocational expert testimony. That is a key distinction between Daniels and the instant case. And for that matter, the Eighth Circuit and Phillips. And I guess I'm confused by your reliance on this vocational expert testimony because you appear to be conceding that if the determination was that she was 55, she would have been eligible for benefit. That's what the grid rules say. Despite what the vocational experts say. Well, there wouldn't be – there wouldn't be a vocational expert testimony. If she happened to have been 55, the grid rules would direct the finding of disabled. Well, but that determination wasn't made until after the hearing, was it? The ALJ – well, she wasn't 55. She was 54. Right. So the ALJ – But he could have determined that she was 55. That would have been within the ALJ's discretion because it was a borderline H situation. But of course, there was no requirement that the ALJ had – So whatever testimony – what you're saying is once he heard the vocational expert, he was bound by it, couldn't ignore it, had to accept all of it, and would not have been allowed to determine that she was 55, is that what you're saying? Well, an ALJ can choose to ignore vocational expert testimony where such testimony is unsupported by the record. But this testimony reflected the limitations contained in the RFC, which are not in dispute by either party. This testimony included the limitations from the RFC, such as the limitations now described as additional vocational adversities, in that they were considered. So substantial evidence supports the ALJ's testimony. In many circuits, as the magistrate judge noted, many courts within this circuit have so found, and it is Fifth Circuit law that substantial evidence will support the ALJ's – the vocational expert's testimony in the ALJ Step 5 finding where the record supports such limitations that the ALJ – that the vocational expert testified to. And again, here, there's no dispute as to what those specific limitations are. This is not a case where we're arguing over how far someone can reach or how much someone can lift. I understand the substantial evidence argument. My question is – I want to go back to something you said about arbitrary lines. So obviously, all lines are arbitrary, and so I'm not asking about grid rule 1 versus grid rule 2 and how they separate 54s and 55s. There is a proposition background to all administrative law and all administrative agencies that agency decision-makers have to explain their decision-making, otherwise it's arbitrary and capricious. And so if the agency commits itself, as it appears to do, that we will not apply these age categories mechanically, that's a different arbitrary problem, isn't it? That is, you have to explain why one age category would apply as opposed to another. Well, you have to – I would say, Your Honor, the ALJ has to consider it. But there actually isn't a requirement that an explanation or finding be given. And that's consistent with longstanding Fifth Circuit case law of a presumption of regularity. I understand the presumption of regularity, but the first thing out of your mouth I want to make sure I understand. How do we know that he considered it? We can follow the Ninth Circuit case. We know that he knows her date of birth. And we know that he knows the date last insured. We know that he knows the appropriate regulation – may I have a second to finish answering your question, Your Honor? Thank you. We know that the ALJ knows the appropriate regulation because it was specifically cited. And we know that the ALJ knows, again, the date of birth and the date of last insured and the regulation. And those facts were communicated to the vocational expert with respect to how old the person was at the administrative hearing where uncontroverted vocational expert testimony was solicited, which again is the biggest distinction between the facts of the Anson case and the Daniels case upon which Appellant urges this Court to rely. So for the foregoing reasons – But can I ask – it seems that – I mean, this is – you know, maybe in this context it's not such a big deal. But we don't want to have agencies with just unfettered discretion, even though they seem to have a lot of discretion and kind of they're insulated from reviewability if there isn't a reason given. And it seems that, as I understand what you've said, and tell me if this is wrong, that the ALJ could have said, you're in the higher category, therefore she wins. The ALJ could have said, I'm not sure whether you're in the higher category or not, so I'm going to listen to testimony from the vocational expert. The vocational expert could have said, she should be in the higher category. And the ALJ could probably still say, no, I'm putting her where she actually is. Or the vocational expert could say, she should be in the lower category, and I'm keeping her in the lower category, and then the ALJ – so the ALJ could have ruled any which a way, either relying upon the vocational expert or not, and it would be insulated from review. And is that a problem? Well, at the end of the day, substantial evidence has to support the ALJ's decision. And that's where the court comes in, to make that determination, to rule whether substantial evidence supports. Again, that's more than a scintilla, but it's not even a preponderance of the evidence. That's the long-established standard of review in the circuit and across the country. In the instant case of all those options, what the ALJ specifically did was ask a hypothetical question to the vocational expert of an individual with the same age and the same limitations and the same transferability or not transferability of skills and the same past relevant work. Could that person perform jobs in existence in the national economy? The answer could have been no. The answer could have been yes. The answer in this case was yes, 475,000. So the ALJ did not say, okay, I've determined that age 54 should apply. What jobs could the person do? The ALJ said, considering a hypothetical of a person with this age, can jobs be performed? Relying on the expert, the uncontroverted testimony, the answer was, well, yes, jobs can. And that was how the ALJ went through the borderline age situation process and relied upon substantial evidence at Step 5 rather than mechanically applying the grid rules. Thank you. We have your argument. Thank you, Your Honor. Mr. Kelly, you saved time for rebuttal. Thank you, Your Honor. To make one point clear, Ms. Schofield has received nothing in the last five and a half years. She could not reapply because the only benefits she would be eligible for are SSI needs-based benefits. And because her husband continues to work and support the family, his resources and income exclude her from any disability benefits whatsoever. Now, getting back to the Step 5 problem here, I think we've been a bit unclear. There are two periods of adjudication that we're discussing. She originally alleged that her disability began in August of 2013. So for the months between August and December, she was a person closely approaching advanced age. The judge had to adjudicate all time periods before him. He determined she had a light RFC. Again, using the physical components first, that leads us to 202.14, which, not mechanically but applying the strength rules, results in a finding of not disabled. But if you read the judge's determination, he finds that the additional limitations in reaching and handling substantially erode the non-exertional basis, meaning that they can't direct a finding. That's why you use them as a framework. For those months, he had to solicit testimony from the VE. That's not what we're arguing about. So in order to support his Step 5 finding, which we haven't disputed, we're saying that prior to 55 or prior to the DLI, yes, she would have been found not disabled using the grid rule as a framework supported by the VE testimony. It's when you go to determine whether or not you go to the higher age category, and once you get to the higher age category, that's where vocational testimony is unnecessary because it directs the conclusion. And that's what's inappropriate in terms of soliciting at that point. With regards to the POMs, neither one of us are really sure in terms of when the POMs was in effect, but it makes no sense to have two different rules. If the DDS had to make an explanation, why wouldn't it be incumbent upon the ALJ, of which this Court is responsible for reviewing, even be more important for them to make those findings? So to have two internal rules doesn't make sense. The more appropriate rule is the instance that they probably did expect the ALJ to make some sort of determination. Also when you get to the finalization of the decision, in Higginbotham, this Court said that the decision is not final until the AC reviews or issues their denial. In this case, the language the AC uses is from Halleck's I-3-3-25. But doesn't Higginbotham also say that the Appeals Council decision is a part of the final decision that we review on appeal? It is. Doesn't Higginbotham stand for that proposition? The thing is, is that technically a denial of review is not a decision. When the AC makes a decision to deny review. No, no, no. The way the regulations are defined, the denial of review is not a decision. If the AC intended to make a decision, yes, they can. So you can deny review without deciding to deny it? Yes. You can grant. If the AC wants to actually make a decision, what they do is they grant review, and then they issue a decision adopting certain findings of the ALJ, and then they make additional findings. Tell me how it's determined that review is denied. Who makes that nondecisional determination? The Appeals Council makes the determination. What they do is they issue the denial. I'm quoting in terms of what the regulations say, and they make a distinction between a review and a decision. Now, obviously in this case, they put language in there. The thing about it is, is the language that they decided to include comes from the new HALEX, not the old HALEX. So to the extent that the AC made a determination, they made the determination in terms of applying the new rules. And once you get to the new rules, the factor aspect of this that we're talking about is not vocational factor, but age, education, and work experience. So when we talk about factors that favor going to the higher age category, let's say she only had an eighth grade education. That's an additional factor. If she worked in an industry that was unique or something along those lines, I can't fathom a concept, but that would be it. But in this case, it's the RFC factors, the additional reaching and handling limitations that favor going to the higher age category. Well, I'm out of time. Thank you very much. Thank you, counsel. We have the argument in this case.